UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES M. LITTLE,

       Plaintiff,

    - against -

CITY CENTER OF MUSIC AND DRAMA, INC.,

       Defendant.

09 Civ. ( )

COMPLAINT

ECF CASE

PLAINTIFF DEMANDS
A TRIAL BY JURY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

   Plaintiff James M. Little ("Little" or "plaintiff"), by his counsel, complaining of

defendant City Center of Music and Drama, Inc. ("CCMD" or "defendant"), alleges as follows:

### NATURE OF CLAIMS

   1.  This action is brought to remedy discrimination on the basis of race as well

as retaliation for opposition to unlawful discriminatory practices, in violation of federal, state and

city anti-discrimination laws, including Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. §

1981 ("Section 1981"); the New York State Human Rights Law, New York Executive Law § 296 et

seq. (the "NYSHRL"); and the New York City Human Rights Law, Administrative Code of the City

of New York § 8-107 et seq. (the "NYCHRL").

   2.  Plaintiff, a highly-credentialed African American stagehand with decades of

experience, has been subject to a long-standing pattern of race discrimination and retaliation by

CCMD, an organization that is responsible for operating and maintaining the theater that is home to

some of New York City's most valued cultural institutions, including the New York City Ballet and

the New York City Opera. CCMD's management has abdicated its responsibility for ensuring that

its supervisors provide equal employment opportunities, which has resulted in a stagehand workforce that is overwhelmingly white and where the few African Americans stagehands who are employed are subject to the unchecked biases of their supervisors. Most recently, plaintiff's supervisor -- a man whose racial biases are so pronounced that he has referred to plaintiff as a "nigger" to one of plaintiff's colleagues -- denied plaintiff a promotion in favor of a white employee who has a fraction of plaintiff's experience and credentials. Moreover, after plaintiff exercised his right to file a complaint regarding this discriminatory treatment, the same supervisor has retaliated against plaintiff by denying plaintiff numerous work assignments, thereby preventing plaintiff from earning a living. CCMD's management is aware of this unlawful conduct, but has done absolutely nothing to stop it.

3.      Plaintiff seeks injunctive and declaratory relief, compensatory and punitive damages, and other appropriate legal and equitable relief pursuant to Section 1981, the NYSHRL and the NYCHRL.

PARTIES, JURISDICTION AND VENUE

4.      CCMD is a non-for-profit corporation organized under the laws of New York. CCMD subleases the David H. Koch Theater (the "Koch Theater" or the "Theater"), formerly known as the New York State Theater, from Lincoln Center, which holds the master lease with the City of New York as owner. CCMD is responsible for the general operation of the Theater. In addition, CCMD provides administrative services to the New York City Ballet and the New York City Opera, both of which operate in the Theater.

5.      Plaintiff is a 57 year-old African-American man. He resides in New York County and has worked as a stagehand for approximately 33 years, including 19 years at the Theater.

2

6.     At all relevant times, CCMD has been plaintiff's "employer" within the meaning of the NYSHRL and the NYCHRL.

7.     As the Southern District of New York is the district where a substantial part of the events giving rise to the claim occurred, venue is proper within this District pursuant to 28 U.S.C. § 1391(a)(2).

8.     Pursuant to § 8-502(c) of the NYCHRL, prior to filing this Complaint, plaintiff served a copy of the Complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York.

9.     On or about May 6, 2009, plaintiff filed a complaint of discrimination and retaliation against CCMD with the New York State Division of Human Rights ("NYSDHR"), which was dual filed with United States Equal Employment Opportunity Commission ("EEOC").   On or about September 2, 2009, the NYSDHR dismissed plaintiff's complaint for administrative convenience.

10.     Plaintiff intends to request a notice of right to sue from the EEOC upon the passage of 180 days from the filing of his charge. When plaintiff receives the notice of his right to sue from the EEOC, he will seek to amend the Complaint to add a claim against CCMD under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. The facts set forth below are those relevant to that claim as well, and therefore, there will be no prejudice to defendant by this procedure.

11.     The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.  The Court has supplemental jurisdiction over plaintiff's NYSHRL and the NYCHRL claims pursuant to 28 U.S.C. § 1367.

<u>FACTUAL ALLEGATIONS</u>

<u>CCMD Employment Structure</u>

12.　CCMD is party to a collective bargaining agreement ("CBA") with Theatrical Protective Union Local No. One, I.A.T.S.E., AFL-CIO ("Local One" or the "Union") with respect to its activities at the Koch Theater. CCMD employees from Local One are divided into three departments: Carpentry Department, Electrical Department, and Property Department. Employees in each department are classified as "basic crew," "operating crew," "maintenance crew," or "extra men."[1]

13.　CCMD employees who are part of a basic crew or operating crew are responsible for preparing the stage for the various productions at the Theater. The CBA provides for ten basic and operating crew members in the Carpentry Department; eight basic and operating crew members in the Electrical Department; and four basic and operating crew members in the Property Department. In total, therefore, CCMD employs 22 members in the basic and operating crews. Under the CBA, <u>these basic and operating</u> crew employees are guaranteed work for eight performances per week for thirty-nine weeks during a calendar year. In addition, CCMD also employs four members of the maintenance crew, who have a separate employment guarantee under the CBA.

14.　The basic crew of the Property Department is comprised of the Head Property man, who is the leader of the Department, and an Assistant Property man, who is second-in-charge. The operating crew of the Property Department consists of two Clearers.

---

[1]　Plaintiff refers to "extra men" and other gender-specific job titles herein because those are the terms used in the CBA.

15.     The Head Property man, as well as the Heads of the Carpentry and Electrical Departments, report to Mark Heiser ("Heiser"), who is the General Manager of the Theater.

16.     If a particular production requires more workers than the members of the basic and operating crews, CCMD hires "extra men" for the production.  Extra men do not have a guaranteed minimum number of days of employment.  However, because there are numerous productions at the Koch Theater and many of those productions require highly involved staging, CCMD often has a need for extra men.

17.     Within each department, extra men are ranked in order that generally corresponds to who will be called first in the event that there is a need for additional stagehand assistance.  For example, in the Property Department, because there are four members of the basic and operating crews, the "fifth extra man" will generally be the first person called if there is a need for additional assistance for a performance, followed by the "sixth extra man," followed by the "seventh extra man," etc.

18.     On information and belief, of the 26 individuals that CCMD presently employs in the basic, operating, and maintenance crews, none are African American.  Indeed, for the entire period that CCMD has operated the Theater, defendant has never employed an African American employee in any of these guaranteed positions.

Little's Background and Employment History at CCMD

19.     Little received a Bachelor of Fine Arts Degree from the Memphis College of Art and a Master of Fine Arts Degree from Syracuse University.

20.     Little has been a member of Local One for approximately 26 years and has been a member of United Scenic Artists Local 829 for approximately 10 years.

5

21.     Prior to working at the Koch Theater, Little worked as a stagehand for many significant institutions in New York, including the Metropolitan Opera House, CBS, ABC, and several Broadway theaters.

22.     Little began working as an extra man in the Property Department at the Koch Theater in or about 1990. Little's job performance has consistently been strong. Between 1990 and 2002, his standing at the Theater improved from being the lowest-ranked extra man to become the sixth extra man in the Property Department (i.e., second in line for any job assignments that require more than the basic and operating crews).

23.     On information and belief, Little is the highest-ranking African American stagehand ever to work at the Theater.

24.     During the entire duration of Little's employment at CCMD, he has been the only African American to work in the Property Department on a consistent basis.

Little's 2002 Discrimination Complaint

25.     In or about March 2002, CCMD promoted Leonard Simoncek ("Simoncek"), a white man, to the Head Property man position. For several years prior to this promotion, Simoncek had been Assistant Property man.

26.     While Simoncek was Assistant Property man, Simoncek frequently served as acting Head Property man when the then-Head Property man delegated his authority to Simoncek or was otherwise not available. On many of these occasions, Simoncek discriminated against Little by offering work assignments to white employees who had substantially less experience and qualifications than did Little.

27.     After Simoncek's promotion to Head Property man, he selected Timothy O'Dell ("O'Dell"), a white man, as the Assistant Property man. In addition, Simoncek selected Ben

6

Dancyger ("Dancyger") and Norman Kirtland ("Kirtland"), both white men, as the two Clearers in the Property Department.

28.    Simoncek continued to discriminate against Little after Simoncek's promotion to Head Property man by denying him work assignments in favor of white employees with less seniority, less experience, and inferior credentials.

29.    Simoncek and O'Dell have expressed racist attitudes towards Little. In a conversation with another stagehand, Simoncek and O'Dell referred to Little as a "nigger" and/or a "fucking nigger."

30.    On or about May 7, 2002, Little filed a complaint of race discrimination and retaliation against CCMD with the NYSDHR alleging that Simoncek had discriminated against him on the basis of race and retaliated against him for opposing unlawful employment practices (the "2002 NYSDHR Complaint").

31.    On or about June 20, 2002, Little and CCMD settled the 2002 NYSDHR Complaint by signing a Pre-Determination Conciliation Agreement And Order After Conciliation ("Conciliation Agreement"), pursuant to which CCMD agreed, inter alia, that Simoncek would "resume the Standard and Traditional Hiring Practices of [CCMD] and Union Local One" and that "Leonard Simoncek is to articulate any skill levels or job performance issues that he believes would alter the hiring procedure." The terms of the Conciliation Agreement were adopted as part of an Order of the NYSDHR.

Little Is Passed Over For The Fifth Extra Man Position

32.    In or about February 2009, William Krinsky ("Krinsky"), a white man who had served as the fifth extra man in the Property Department for several years, elected to retire. As a result of Krinsky's retirement, the fifth extra man position became vacant.

33.     Under the customary practice of the CCMD and Local One, Little should have been elevated from the sixth extra man position to the fifth extra man position by virtue of his seniority. Throughout Little's tenure at the Theater, extra men have typically moved up a spot when there has been a vacancy at a higher level.

34.     Even if seniority was not considered, Little was the most qualified person to become the fifth extra man based on his experience, work performance, and overall credentials. Indeed, over the years, Little has served as a substitute fifth extra man for months at a time when Krinsky was traveling. Little has never been informed that his performance was inadequate.

35.     Notwithstanding Little's seniority and other qualifications, soon after Krinsky's retirement, Simoncek announced that he was replacing Krinsky as the fifth extra man with Justin Borowinski ("Borowinski"), a white male in his early thirties. In contrast to Little's nearly two decades of experience at the Theater, Borowinski had only worked at the Theater for approximately four years. In addition, Little has far more overall experience as a stagehand than Borowinski.

36.     In violation of the Conciliation Agreement, the promotion of Borowinski over Little was not in accordance with "the Standard and Traditional Hiring Practices of [CCMD] and Union Local One." In further violation of the Conciliation Agreement, at no time did Simoncek articulate any skill requirements or job performance issues that would justify the hiring of Borowinski over Little for the fifth extra man position.

37.     On or about May 6, 2009, Little filed another discrimination and retaliation Complaint with NYSDHR concerning CCMD's failure to promote him to the fifth extra man position (the "2009 Complaint").

8

38.     In responding to the 2009 Complaint, CCMD claimed to the NYSDHR that Borowinski was selected for the fifth extra man position because, inter alia, Borowinski was better qualified than Little and because Borowinski is "reliable, hard worker," whereas Little's "complacency does not add value to Mr. Simoncek's team." These statements are false and are a pretext for discrimination.   In fact, Little is far more qualified than Borowinski for the fifth extra man position.  Furthermore, any claim that Little is "complacent" is based solely on stereotypical notions of African Americans as lazy, not on Little's actual work performance.

39.     Following Little's filing of the 2009 Complaint, Simoncek has retaliated against Little by denying him work assignments that he should have received based on his seniority and qualifications.

40.     Heiser, the General Manager of the Theater, is aware of Simoncek's discriminatory and retaliatory actions, but he has done nothing to remedy Simoncek's unlawful conduct.

41.     As a consequence of CCMD denying Little the fifth extra man position and passing him over for other work assignments in retaliation for his complaint, Little has lost and will continue to lose many thousands of dollars in income.

FIRST CAUSE OF ACTION

Race Discrimination Under Section 1981

42.     Plaintiff repeats and realleges paragraphs 1-41 as if fully set forth herein.

43.     By the acts and practices described above, defendant discriminated against plaintiff in the terms and conditions of his employment on the basis of his race, in violation of Section 1981.

44.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's discriminatory acts.

45.     Defendant acted intentionally and with malice and/or reckless indifference to plaintiff's federally protected rights.


## SECOND CAUSE OF ACTION

### Retaliation Under Section 1981

46.     Plaintiff repeats and realleges paragraphs 1-45 as if fully set forth herein.

47.     By the acts and practices described above, defendant retaliated against plaintiff because he opposed unlawful discrimination and/or because he filed complaints of discrimination with the NYSDHR.

48.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's retaliatory acts.

49.     Defendant acted intentionally and with malice and/or reckless indifference to plaintiff's federally protected rights.


## THIRD CAUSE OF ACTION

### Race Discrimination Under the NYSHRL

50.     Plaintiff repeats and realleges paragraphs 1-49 as if fully set forth herein.

51.    By the acts and practices described above, defendant discriminated against plaintiff in the terms and conditions of his employment on the basis of his race, in violation of the NYSHRL.

52.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's discriminatory acts.

## FOURTH CAUSE OF ACTION

### Retaliation Under the NYSHRL

53.    Plaintiff repeats and realleges paragraphs 1-52 as if fully set forth herein.

54.    By the acts and practices described above, defendant retaliated against plaintiff because he opposed unlawful discrimination and/or because he filed complaints of discrimination with the NYSDHR, in violation of the NYSHRL.

55.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's retaliatory acts.

## FIFTH CAUSE OF ACTION

### Breach of Conciliation Agreement Under the NYSHRL

56.    Plaintiff repeats and realleges paragraphs 1-55 as if fully set forth herein.

57.    By the acts and practices described above, defendant breached the Conciliation Agreement, in violation of the NYSHRL.

58.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's breach of the Conciliation Agreement.

## SIXTH CAUSE OF ACTION

### Race Discrimination Under the NYCHRL

59.     Plaintiff repeats and realleges paragraphs 1-58 as if fully set forth herein.

60.     By the acts and practices described above, defendant discriminated against plaintiff in the terms and conditions of his employment on the basis of his race, in violation of the NYCHRL.

61.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's discriminatory acts.

62.     Defendant acted intentionally and with malice and/or reckless indifference to plaintiff's statutory rights.

## SEVENTH CAUSE OF ACTION

### Retaliation Under the NYCHRL

63.     Plaintiff repeats and realleges paragraphs 1-62 as if fully set forth herein.

64.     By the acts and practices described above, defendant retaliated against plaintiff because he opposed unlawful discrimination and/or because he filed complaints of discrimination with the NYSDHR, in violation of the NYCHRL.

65.     Plaintiff is now suffering and will continue to suffer irreparable injury and

monetary damages and damages for mental anguish and humiliation as a result of defendant's retaliatory acts.

66.    Defendant acted intentionally and with malice and/or reckless indifference to plaintiff's statutory rights.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter an award:

(a)    declaring the acts and practices complained of herein are in violation of Section 1981, the NYSHRL and the NYCHRL.

(b)    enjoining and permanently restraining these violations;

(c)    directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff's employment opportunities;

(d)    directing defendant to place plaintiff in the position he would be in but for defendant's discriminatory and retaliatory treatment of him, and to make him whole for all earnings he would have received but for defendant's discriminatory and retaliatory treatment, including, but not limited to, wages, bonuses, pension, interest and other lost benefits;

(e)    awarding plaintiff compensatory damages for his emotional distress and humiliation;

(f)    awarding plaintiff punitive damages;

(g)    awarding plaintiff pre-judgment and post-judgment interest, as well as reasonable attorneys' fees and the costs of this action;

(h)    awarding plaintiff damages relating to adverse tax consequences; and

(i)     awarding such other and further relief as the Court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury in this action.

Dated: New York, New York
      September 25, 2009

THE LAW OFFICE OF
KEVIN MINTZER, P.C.

By: _____

Kevin Mintzer (KM 4741)
Attorney for Plaintiff
1350 Broadway, Suite 1001
New York, New York 10018
Tel: (646) 843-8180
Fax: (646) 478-9768
km@mintzerfirm.com

14